**PARK HILLS MUSIC CLUB, INC. et al., Plaintiffs,**

v.

**BOARD OF EDUCATION OF the CITY OF FAIRBORN, COUNTY OF GREENE, STATE OF OHIO et al., Defendants.**

No. C–3–80–552.

United States District Court,
S. D. Ohio, W. D.

April 23, 1981.

---

8. See note 1, *supra*.

Anthony B. Pennington, Pennington & Kotecha, Springfield, Ohio, for plaintiffs.

Joseph R. Fodal, Schlafman & Fodal Co., L.P.A., Fairborn, Ohio, for defendants.

DECISION AND ENTRY DISMISSING PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UPON COURT'S OWN MOTION; DEFENDANTS' MOTION TO DISMISS DEEMED MOOT AND NOT RULED UPON; TERMINATION ENTRY

RICE, District Judge.

The captioned cause came to be heard upon the Defendants' Motion, pursuant to Fed.R.Civ.P. 12(b)(6), seeking an Order of the Court dismissing the Complaint for the reason that it fails to state a claim upon which relief can be granted.

Plaintiffs in this cause are: (1) the Park Hills Music Club, Inc. (the Club), a non-profit Ohio corporation whose primary purpose is to promote and assist the activities of the music department at Park Hills High School (the School), in the school district for the City of Fairborn, Ohio; (2) fourteen minor students of the School, who are also members of the Park Hills Viking Guard Marching Band or its auxiliary units (the Band); and (3) twenty-one adult parents of the aforementioned minors, who are also members of the Club.

The Complaint contains class action allegations for the benefit of similarly situated adults and minors. However, Plaintiffs' motion for certification of the class has only been recently filed and is not yet at issue.

The Defendants are the Principal of the School, the Superintendent of Fairborn City Schools, and all members of the Fairborn Board of Education.

The Complaint alleges that the Band participated with thirty other school bands in a four-state regional competition, held in Cincinnati, Ohio, in October, 1980. The primary objective of the Band's participation in this competition was to secure from the Orange Bowl Committee (OBC) an invitation to participate with winners from ten other regions in the Orange Bowl National Competition and the King Orange Jamboree Parade, to be held in Miami, Florida, on December 31, 1981. The Band participated in the regional competition with the permission or acquiescence of all Defendants. The Band was selected as the winner of the regional competition and was, accordingly, extended an invitation to participate in the Florida activities by the OBC.

In November, 1980, the Defendant Board members "decided against permitting such participation" by the Band in the Florida competition and parade. Apparently, the Board's decision to refuse permission was based upon the advice and recommendation of the other Defendants, and was in accordance with Board Policy No. 4.29, which states:

A school activity may not involve students on long and expensive trips. Out-of-state trips and trips outside the United States by school-sponsored performing groups will not be approved during the school year, during school vacations, or during summer vacations.

In December, 1980, the Defendant Principal notified the OBC, by letter, that a decision had been made to refuse permission for the Band's participation in the Florida activities.

Finally, it is alleged that the musical instruments used by the Band, as well as the Band uniforms, are the property of the Club. It appears that the expense of the Band's participation in the Florida activities would be borne *solely* by the Club.

Based on the preceding factual allegations, Plaintiffs' demand that the Court: (1) declare Policy No. 4.29 unconstitutional and unenforceable; (2) temporarily and permanently enjoin Defendants from (a) enforcing Policy No. 4.29, (b) interfering with Plaintiffs' participation in the Florida competition or parade, or (c) retaliating against Plaintiffs for such participation; and (3) award Plaintiffs damages in the amount of one million dollars.

By way of showing entitlement to the relief demanded, Plaintiffs set forth in the Complaint ten theories of unlawful infringement by Defendants of Plaintiffs' federal constitutional rights (either alone or in conjunction with various infringements of state constitutional, statutory, and common law rights) and one theory predicated

solely on Defendants' violation of a state statute. The alleged infringements by Defendants of Plaintiffs' federal constitutional rights may be summarized as follows: (1) infringement of the right to interstate travel; (2) infringement of the right to free speech in the form of musical expression; (3) infringement of the right to associate and assemble for the purpose of producing music; (4) infringement of the right to liberty, including the right to seek, pursue, and achieve happiness and amusement in music; (5) infringement of the right to equal protection of the laws in the exercise of other fundamental rights; (6) infringement of the right to equal protection of the laws in the nonselective enforcement of same; (7) infringement of the right to use and enjoy personal property, including musical instruments and uniforms, or the right to just compensation for deprivation of the use of such property; (8) infringement of the right to procedural due process, including notice and hearing in the promulgation and application of Policy No. 4.29; (9) infringement of the right to due process by promulgation of Policy No. 4.29 in vague form, and application of same in an overbroad manner; and (10) infringement of the right to due process by promulgation of a policy which is neither necessary nor rationally related to the promotion of education or any legitimate state interest.

■ Defendants' motion to dismiss is based solely upon the proposition that there is no student right or property interest in participation in extracurricular activities which is protected by the federal constitution. *See, e. g., Glenn v. Harper*, No. C76–106 (N.D.Ohio, Mar. 17, 1978), *aff'd* 620 F.2d 302 (6th Cir. 1980). The Court agrees with this proposition. In accordance with a number of the cases cited by Defendants, *see, e. g., Glenn v. Harper, supra; Hamilton v. Tennessee Secondary School Athletic Assoc.*, 552 F.2d 681 (6th Cir. 1976), such a proposition might present problems for those of Plaintiffs' theories which postulate

a denial of due process in connection with Plaintiffs' extracurricular activities.[1]

■ However, *were the Court to reach Defendants' motion, which the Court finds it need not do*, it would not be able to agree with the broader conclusion which Defendants draw from the above proposition, i. e., that Plaintiffs have *on that account alone* necessarily failed to state any federal constitutional claim. For example, it is also a well-settled proposition that the state may not *withdraw* a benefit, as a penalty for the recipient's exercise of a constitutional right, even if the benefit itself is not of constitutional dimensions. *Mt. Health City Board of Education v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–575, 50 L.Ed.2d 471 (1977) (infringement in discharging nontenured teacher on account of First Amendment expression); *Gilpin v. Kansas State High School Activities Assoc.*, 377 F.Supp. 1233, 1240–41 (D.Kan.1973) (violation of equal protection by denying female participation in extracurricular athletics); *Kite v. Marshall*, 494 F.Supp. 227, 232–33 (S.D.Tex. 1980) (athletic ineligibility because of attendance at summer basketball camp violates family right to privacy). Thus, if the present case involved Defendants' termination of the Park Hills band program because of the student Plaintiffs' exercise of a constitutional right, then Plaintiffs might have a constitutional claim to *reinstatement* of the band program even though Plaintiffs would not appear to have had a constitutionally recognized right or interest in *participating* in such program in the first instance.

■ However, the Court declines to decide Defendants' Rule 12(b)(6) motion because it finds that it lacks subject matter jurisdiction, and that dismissal of the Complaint is, therefore, warranted under Fed.R. Civ.P. 12(h)(3).[2] The Court reaches this conclusion because it finds, upon close scrutiny of the Complaint and upon extensive reflection on the explicit and implicit alle-

1. If Plaintiffs have no protectible liberty or property interests in extracurricular activities, including the Park Hills band program, then the constitutional guarantee of due process would not "attach" to those activities and would not

restrict state action (i. e., Defendants' conduct) in matters affecting Plaintiffs' continued enjoyment of those activities.

2. Fed.R.Civ.P. 12 provides in pertinent parts:

gations contained, therein, that the Complaint fails to present, or even to demonstrate, the existence of any "real controversy" between the parties which substantially implicates a constitutional right, or raises a federal question, as is required by Article III, section 2, of the Constitution and 28 U.S.C. §§ 1331, 1343, 2201–2202.[3]

■ It must be emphasized that the only actions of the Defendants pleaded in the

---

*Rule 12. Defenses and Objections ....*

. . . .

(b) *How Presented ....* [T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ... (6) failure to state a claim upon which relief can be granted, ....

. . . .

(h) *Waiver or Preservation of Certain Defenses*

. . . .

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

It is fundamental that a federal court cannot entertain any matter that does not fall within its jurisdiction—i. e., any matter that the court lacks constitutional or statutory authority to hear and decide. A defendant may seek dismissal of a complaint which presents matters wholly outside a federal court's jurisdiction by motion under Rule 12(b)(1).

On the other hand, a complaint may present a matter which a federal court does have authority to hear and decide, but the matter is presented in a manner which fails to show that the plaintiff might be able to obtain a favorable decision—i. e., if it is inconceivable under settled legal principles that the plaintiff would be entitled to relief upon his allegations, even if the allegations are true. A defendant may seek dismissal of a complaint which fails to state a claim upon which relief can be granted by motion under Rule 12(b)(6).

Confusion sometimes arises when dismissal *appears* warranted under *both* Rule 12(b)(1) *and* Rule 12(b)(6). For example, a complaint might state that the plaintiff has been injured, and allege that the plaintiff is entitled to relief from his injury based upon a federal law. The federal court's jurisdiction under 28 U.S.C. § 1331 would be invoked on the basis that the claim presents a "federal question." If, upon examination of the complaint, it becomes clear that the plaintiff would not be entitled to relief under federal law, even if the factual allegations in the complaint were true, then it might be said that plaintiff had *failed to state a claim within the federal court's jurisdiction.* However, this does *not* mean that dismissal is warranted *under both Rule 12(b)(1) and Rule 12(b)(6).* Rather, if the "federal question" upon which jurisdiction is alleged is frivolous, fabricated, or insubstantial, then dismissal follows under Rule 12(b)(1) for lack of jurisdiction. But if the "federal question" presented by the complaint is substantial (although it can be readily resolved against the plaintiff at the outset), then dismissal follows under Rule 12(b)(6) for failure to state a claim. In the latter case, the court *exercises jurisdiction* in resolving the "federal question" against the plaintiff, and, thereby, in determining that no claim is stated under federal law; in the former case, the court *cannot exercise jurisdiction* because it is clear from the outset that there is no substantial "federal question" presented upon which the exercise of jurisdiction might be founded. *See Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (differentiating between dismissal for failure to state a claim, and dismissal for failure to present a substantial claim within a federal court's jurisdiction).

Because jurisdiction is an absolute necessity which cannot be waived by the parties, a lack of jurisdiction may lead to dismissal *on the court's own motion,* under Rule 12(h)(3), if the defendant fails to seek dismissal under Rule 12(b)(1).

**3.** Article III, section 2, of the federal constitution establishes *and limits* the "Judicial Power —i. e., jurisdiction—which may be exercised by any federal court. Under section 2, federal court jurisdiction extends in its farthest reaches only to nine specified classes of "cases and controversies." The "cases and controversies" requirement, common to the specified classes, is not always capable of simple explanation and, in the words of Justice Frankfurter, "the expert feel of lawyers" is often needed to determine if the requirement is or is not met. *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 150, 71 S.Ct. 624, 637, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

Whatever may be the complexities of the "cases and controversies" requirement in some situations, one thing is clear and certain: federal courts lack jurisdiction to render advisory opinions.

A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.*

Complaint are *the decision to refuse permission or approval* for the Band's participation in the Florida activities, *and the communication of that decision* to the OBC. There is no explicit allegation that Defendants are actually obstructing or preventing the Band's trip to Florida, and no explicit allegation that the Defendants are planning to penalize Plaintiffs if the Band makes the trip. There is no indication that the Band either is being prevented from making the trip, or, in fact, will not be making the trip for any reason; or that Plaintiffs' interests are threatened with injury or will be injured by anybody (even if only by deprivation of a non-constitutional benefit) if the Band makes the trip. Thus, even if the Band's proposed participation in the Florida activities should implicate some constitutional values (e. g., rights to interstate travel, free speech, due process, equal protection), there is simply no factual allegation in the Complaint that such values are presently threatened or will be infringed should the Band continue to insist on making the trip.

■ There are, perhaps, two *possible* exceptions to the preceding analysis. First, as indicated, it is alleged that the Board refused to extend its approval for the Florida venture. Implicitly, Plaintiffs appear to consider such refusal to approve as casting a "chill" upon the constitutional rights which Plaintiffs seek to exercise by traveling to Florida. If this is, in fact, what Plaintiffs are alleging, it is patently without merit. The Court is not aware of any constitutional provision or doctrine which requires that the state (Defendants, herein) either affirmatively approve of the exercise of one's rights or refrain from all disagreement with such exercise. As long as the state's attitude or opinion does not transform into action or a threat of action which would prevent or penalize the exercise of rights, no "chill" on the exercise of rights can be attributed to the adoption of that attitude by the state. "The shivering here [is] self-induced." *Fifth Avenue Peace Parade Committee v. Gray*, 480 F.2d 326, 332 (2d Cir. 1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974) (affirming dismissal of complaint for failure to present a justiciable controversy, where claimed "chill" on exercise of rights was not supported by claim of specific present objective harm or threat of specific future harm). *See also, Laird v. Tatum*, 408 U.S. 1, 14–15, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972).

■ The situation is not changed by the fact that the Defendants may disagree with Plaintiffs' proposed exercise of rights *pursuant to a written policy which prohibits approval.* If the person seeking to exercise a right is not constitutionally entitled to the

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937) (emphasis added; citations omitted).

Thus, a person may allege that he has a constitutional right to pursue certain activities. That person's adversary may strongly disagree, and may even voice his vehement opposition. However, it is not for a federal court to determine and declare that the person does or does not have the alleged right *unless and until* the exercise of the right is infringed or restricted (or appears certain to be infringed or restricted) by the adversary. Until the person's alleged right is injured, or threatened with certain injury, the existence of the right is hypothetical: it makes no difference whether the right exists because circumstances have not yet developed to the point where the person would be entitled to "specific relief" with respect to the alleged right (i. e., damages for injury to the right, or protection against certain threatened injury). Until the right is injured, or threatened with certain injury, a declaration by a federal court that the right does or does not exist is nothing more than an advisory opinion in which *the court speculates regarding the person's entitlement to relief in a situation which does not yet exist.*

The jurisdictional statutes cited in the complaint, 28 U.S.C. §§ 1331, 1343 (federal question and civil rights jurisdiction), implement the federal courts' authority to hear the first class of "cases and controversies" set forth in Article III, section 2, of the constitution. Since the "cases and controversies" requirement is a *constitutional* limitation on the scope of the federal judicial power, the jurisdictional *statutes* cannot provide federal courts with greater authority to hear and decide matters which do not satisfy that requirement. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, is a remedial rather than jurisdictional statute, and expressly requires that there be an "actual controversy within its jurisdiction" before a court may declare the rights of any party who comes before it.

state's approval, it makes no difference whether the state's decision to refuse approval is made extemporaneously or by standing rule.

Second, as indicated above, it is alleged that the Defendant Principal advised the OBC of the decision to refuse approval for the Band's trip. The factual significance of this action is not apparent. The Complaint indicates that the OBC's invitation was given *to members of the Band*—not to the Defendants—and it nowhere appears that the invitation was conditioned on the Band's ability to obtain the Defendants' permission or approval. Therefore, the Defendants' approval or disapproval of the proposed trip would appear to have no effect upon the continued viability of the OBC invitation. If this is the case, then the Principal's letter to the OBC would clearly not constitute "specific present objective harm or a threat of specific future harm" and, in fact, would constitute nothing more than a wholly unobjectionable statement of the Defendants' attitude or opinion about the proposed trip.

The matter is no different if the Complaint is liberally construed in Plaintiffs' favor, and the "worst case" is assumed—i. e., if the Complaint is considered to implicitly allege that the OBC invitation will be withdrawn if the Band does not obtain Defendants' approval. Under this circumstance, Plaintiffs might contend that the Defendants' disagreement with the proposed trip had been or will be transformed into action (sending notice to the OBC) which effectively prevents Plaintiffs' exercise of constitutional rights. But even under this assumed circumstance, the Court can perceive no constitutional value which might in fact be jeopardized.

Plaintiffs may have a constitutionally protected right or interest in traveling to Florida, on their own time, at their own expense, for the purpose of assembling together to produce music, while wearing their own uniforms and using their own instruments. However, it cannot be said that Plaintiffs have a *constitutionally* protected right or interest in undertaking these activities *under a conditional invitation extended by the OBC* (or during the course of a competition or parade conducted and controlled by the OBC). If, as is presently assumed, the OBC chose to extend its invitation to the Band *conditioned upon Defendants' approval*, the extension of that invitation provides Plaintiffs with no special constitutional right or entitlement *against the Defendants* to have that condition fulfilled. Defendants' notification to the OBC of their refusal to approve does not prevent Plaintiffs from undertaking constitutionally protected activities (e. g. to travel to Florida, to play music, etc.). At worst, the notice only prevents Plaintiffs from taking advantage of the unique opportunity to pursue such activities under the OBC invitation (and, consequently, during the course of OBC events)—which unique opportunity is denied *in the OBC's discretion* by the nonfulfillment of a condition, to which Plaintiffs have no constitutional right to demand that Defendants fulfill.

In essence, the Complaint presents no controversy within this Court's federal question or civil rights jurisdiction. The Complaint says no more than that the Band has been afforded a special opportunity to travel to Florida (and, thereby, possibly exercise certain constitutional rights), and that the Defendants have refused to provide their "stamp of approval" for such activity. The Court perceives no injury to Plaintiffs' constitutional rights, threatened or actual, in this scenario. What was said regarding the limited scope of federal jurisdiction in *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688 (1936), has special application to the present case when viewed in this manner:

> The pronouncements, policies and program of the [government agency] and its directors, their motives and desires, did not give rise to a justiciable controversy save as they had fruition in action of a definite and concrete character constituting an actual or threatened interference with the rights of the persons complaining. The judicial power does not extend

to the determination of abstract questions.

The parties may well be at odds over the "wisdom" (*see* Complaint ¶ 15) of Board Policy 4.29 or of the Defendants' unfavorable attitude toward the Band's proposed trip.[4] However, unless such attitude on Defendants' part should be transformed into action which impinges upon Plaintiffs' exercise of constitutional rights (e. g., by preventing the trip, or by penalizing or threatening to penalize those who make the trip), no constitutional controversy within this Court's jurisdiction is presented. When liberally construed in Plaintiffs' favor, the Complaint fails to remotely suggest such further action, or the threat of such action on Defendants' part.

As far as the Complaint informs the Court, there is nothing which is preventing the Band from traveling to Florida or from freely and fully exercising their constitutional rights by such action. Defendants may be in disagreement with the "wisdom" of the trip, and may be refusing to condone it, but the Defendants' expressed attitude does not present an obstacle to making the trip and does not remotely suggest that Defendants will "retaliate" if the trip is made.

Finally, the Court notes that the Hodges affidavit, submitted by Plaintiffs, does indicate that the Defendant Superintendent allegedly made statements to Hodges (a Plaintiff, herein) which *might* be construed as a threat of harm should Hodges continue as a member of the Club. A threat of harm, under color of state law, for continued association in a voluntary organization, might constitute an impermissible infringement on constitutional rights (e. g. by "chilling" a right of association). Nonetheless, whatever might be made of the incident described *in the Hodges affidavit*, it is simply not a matter *within the scope of the Complaint*, regardless of the extent to which the Complaint might be liberally construed.

The Court intimates no opinion regarding the viability of any constitutional claim Plaintiffs *might have under circumstances which are not presented by the Complaint*, or which do not fall within the scope of the Complaint, construed most strongly in Plaintiffs' favor. The Court has repeatedly emphasized throughout this decision exactly what it understands to be disclosed by the Complaint, *as well as what the Complaint fails to disclose* (in terms of the circumstances of this case) in order that there will be no misunderstanding of the basis for this decision. Specifically, the Court *has only assumed*—i. e., the Court has refrained from deciding—that Plaintiffs' proposed trip to Florida would involve the exercise of constitutional rights, as is alleged. Should Plaintiffs seek to commence a new action on the matters presently dismissed, they will, of course, be required to state additional matters showing that the *alleged* constitutional rights are being injured (i. e., infringed, restricted, or restrained), or threatened with certain injury, by the Defendants. In short, Plaintiffs will be re-

---

4. The Complaint does not suggest the rationale behind Defendants' refusal to approve, other than that it is founded on Policy 4.29. In view of the Club's willingness to bear the expense of the trip, it does not appear that the school district's money is at issue. Based on Plaintiffs' affidavits, it does appear that the policy may have been promulgated after a female student became pregnant during an out-of-state trip in 1956. Other affidavits indicate that the Defendants' current refusal to approve may be predicated on some unidentified standard of a high school accrediting association, on the fact that one of the Defendants' children was denied a similar opportunity to make an out-of-state trip in 1969, or on the Defendant Superintendent's belief that the Club is a "subversive hate group". Plaintiffs' memorandum emphasizes that trips of this kind are highly educational.

It must be made absolutely clear that this Court would in no event have any occasion—indeed, the Court would have no authority—to consider, question, or determine the *"wisdom"* of any educational policy adopted by a duly constituted local school board (e. g., in particular, the somewhat strange "policy" articulated in 4.29). Even if a constitutional question were presented, herein, this Court's offices would extend only to the adjudication of implicated constitutional rights and, perhaps, pendent state claims, but not to the question whether a policy properly promulgated within the school board's discretion is educationally sound or unsound.

quired to demonstrate that a "real controversy," in the constitutional sense, exists with respect to the exercise of Plaintiffs' *alleged* rights. Then, *and only then*, would this Court have jurisdiction to determine whether Plaintiffs' proposed trip to Florida would involve the exercise of constitutional rights.

For the aforestated reasons, this Court finds that the Complaint presents no controversy of constitutional dimension as is required by Art. III § 2 of the Constitution and 28 U.S.C. §§ 1331, 1343, 2201–2202. Therefore, the Court finds that it lacks subject matter jurisdiction over the matters contained in the Complaint and, pursuant to Fed.R.Civ.P. 12(h)(3), the Complaint is hereby ordered dismissed without prejudice.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.