Shirley THOMPSON, et al., Plaintiffs,

v.

Robert A. KERR, et al., Defendants.

No. C–3–81–035.

United States District Court, S.D. Ohio, W.D.

Nov. 16, 1982.

J. James Rogan, Rogan & Hibberd, P.S.C., Danville, Ky., Emerson Keck, Cross & Turner, Dayton, Ohio, for plaintiffs.

Roger J. Makley, Coolidge, Wall, Matusoff, Womsley & Lombard Co., L.P.A., Robert P. Bartlett, Jr., Estabrook, Finn & McKee, Dayton, Ohio, for defendants.

## DECISION AND ENTRY ON PENDING MOTIONS; DEFENDANTS' MOTION TO DISMISS ORIGINAL COMPLAINT SUSTAINED; DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT OVERRULED IN PART AND SUSTAINED IN PART; DEFENDANTS' MOTION TO STAY ACTION OVERRULED; CONFERENCE CALL SET

RICE, District Judge.

Plaintiffs in this action have filed two complaints. The original complaint was filed by Shirley Thompson and Joseph S. Thompson, citizens of Kentucky, and Thompson Mobile Modulars, Inc. (Modulars), a company incorporated in Kentucky, of which the individual Plaintiffs were president and vice-president, respectively. The first amended complaint was filed only by Modulars.[1] The original complaint alleges that the named Defendants violated provisions of the National Bank Act, 12 U.S.C. § 21 *et seq.*, while the first amended complaint alleges that Defendants violated provisions of the Act, and also states claims under Ohio law. Two motions are currently pending before the Court, to wit:

(1) Defendants' motion to dismiss the original complaint (docs. # 7 & 8), pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5) & (6); and

(2) Defendants' motion to dismiss the first amended complaint (docs. # 15 & 16), pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5) & (6), or, alternatively, to stay this action, pending the resolution of a proceeding in a court in the state of Kentucky.

For the reasons set forth below, Defendants' motion to dismiss the original complaint is sustained, for insufficiency of service of process, Rule 12(b)(5). Defendants' motion to dismiss the first amended complaint is overruled in part and sustained in part. Finally, Defendants' motion to stay this action is overruled.

## I. PROCEDURAL BACKGROUND

As noted above, the original complaint was filed by three Plaintiffs. Said complaint named the seventeen members of the Board of Directors of Winters National Bank and Trust Company of Dayton, Ohio (Winters) as Defendants.[2] These Defendants, the complaint alleges, knowingly permitted one R.L. Morgan, an agent of Winters, to act as an agent of Foremost Insurance Company. Original Complaint, ¶ 4. The complaint further alleges that Modulars financed the purchase of 32 mobile homes for a rental program from Winters in 1975, through a loan from Winters, that Winters required Modulars and the Thompsons to purchase "fire, theft, personal liability, vendor's security interest and comprehensive insurance coverage" for said mobile homes through Morgan, but that the insurance policies issued by Foremost Industries did not provide the coverage bargained for, since rental of mobile homes was excluded. ¶¶ 4–11. As a result, the complaint con-

---

**1.** The first amended complaint purports to reiterate, and incorporate by reference, the allegations in the original complaint (see first paragraph under each Count). This practice is permissible, Fed.R.Civ.P. 10(c), although the preferred practice is to file an entirely new pleading. 6 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1476 at 391–92 (1971). However, the face of the first amended complaint only refers to *one* plaintiff—Modulars—as bringing the action. Therefore, while that complaint is captioned "Shirley Thompson, et al.," the Court must, and will, assume that only

Modulars is bringing the action set forth in the first amended complaint.

**2.** The following persons were named as individual Defendants: Robert A. Kerr, Robert B. Killen, James W. McSwiney, Allen J. Martin, David B. Meeker, Carl Mueller (sic), Robert S. Oelman, Harry S. Price, Max Ratner, William V. Richards, Raymond A. Roesch, Robert F. Sharpe, John F. Torley, George Walther, Jr., Donald F. Whitehead, Harold J. Winch, and Louis Wozar. Original Complaint, ¶ 2.

cludes, Plaintiffs suffered losses because of the insurance premiums paid to Winters on nonexistent coverage, and because Plaintiffs were not reimbursed for monies paid for repairs to several of the mobile homes.

Said acts of the Defendants were alleged to have violated the National Bank Act, 12 U.S.C. §§ 92, 93. ¶¶ 13–14. The jurisdiction of this Court was invoked pursuant to 12 U.S.C. § 93, and relief in the amounts of $22,094.98, plus interest, in actual damages, and $300,000.00 in punitive damages, was prayed for.

The First Amended Complaint, filed by Modulars in this Court on May 21, 1981, is divided into two Counts. The first Count, after reiterating the allegations in the original complaint, First Amended Complaint, Count I, ¶ 1, alleged that since 1972, Winters agreed to pay Modulars a finders fee for the sale of mobile homes financed by Winters, and that Winters would withhold a portion of the finders fee, in a separate account under the name of Modulars. ¶¶ 4–5. However, Count I further alleges, Winters commingled the funds held in said account into a general escrow account; Winters funded the latter account by deducting two (2) percent of the total monthly volume dollars of installment loan contracts purchased by Winters from mobile home dealers (including Modulars). ¶ 7. A provision in said agreement waiving Modulars' right and claims to any monies in the escrow account is alleged to be unconscionable and coercive. ¶ 9. Finally, Count I alleges that Defendants Robert Kerr and Winters ordered the elimination of the general escrow account. ¶ 10. Said acts were alleged to have violated 12 U.S.C. § 73, and jurisdiction of this Court was invoked under 12 U.S.C. § 93. ¶ 13.

The second Count also reiterated the allegations found in the original complaint, First Amended Complaint, Count II, ¶ 1, and set forth factual allegations identical to those in Count I. However, said acts are alleged to have violated the "implied covenant of good faith and fair dealing . . . as a result of the business relationship between" Modulars and the Defendants. ¶ 11. For Count II, the jurisdiction of this Court was invoked pursuant to the diversity statute, 28 U.S.C. § 1332(a)(1). Unlike the original complaint, the First Amended Complaint also named Winters as a Defendant.

## II. DEFENDANTS' MOTION TO DISMISS THE ORIGINAL COMPLAINT IS SUSTAINED

Defendants advance three grounds in support of their motion to dismiss the original complaint, pursuant to Fed.R.Civ.P. 12(b), to wit: (1) service of process on the directors did not satisfy the requirements of Fed.R.Civ.P. 4(d)(1) & (7), (2) the complaint failed to state a claim upon which relief could be granted as to three of the Defendants, who were not members of the Board of Directors of Winters at the time of the acts alleged in the complaint, and (3) Plaintiffs, in any event, lacked standing, under 12 U.S.C. § 93, to maintain this action.

For the reasons set forth below, the Court finds the first ground to be well taken, and, therefore, finds it unnecessary to address the other grounds for dismissal advanced by the Defendants.

In considering a motion to dismiss, pursuant to Rule 12(b)(5), this Court must accept as true all well pleaded allegations of the complaint, *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1034–35 (6th Cir.1979), although reference to the record is permissible to determine the alleged insufficiency of service of process. 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1353 at 581 (1969).

The record indicates that the original complaint was served, by certified mail, at the corporate offices of Winters, *not* upon the individual Defendants. Federal Rule 4(d)(1) requires that service upon individuals be made to the individual personally, at his dwelling house, or through his authorized agent. Said requirements were not complied with herein. In addition, the requirements of Rule 4(d)(1) are not satisfied by service upon a defendant's place of work or business. *Gipson v. Township of Bass River,* 82 F.R.D. 122, 125 (D.N.J.1979);

2 Moore's *Federal Practice*, ¶ 4.11[1] at 4–125 (2d ed. 1982). Thus, service of the original complaint upon Winters, only, is insufficient to satisfy the service of process requirements with respect to the individual defendants.

■ Under Federal Rule 4(d)(7), however, an individual may be served "in the manner prescribed by the law of the state in which the district court is held...." The applicable Ohio rule, Ohio R.Civ.P. 4.1(1), permits service upon individuals by certified mail to the address set forth in the caption of the complaint, as was done herein. Nevertheless, the Ohio Rules must be further construed to conform with the requirements of due process: service must be "reasonably calculated" to reach the interested party. *Samson Sales, Inc. v. Honeywell, Inc.,* 66 Ohio St.2d 290, 421 N.E.2d 522 (1981).

■ By an uncontradicted affidavit (doc. # 7, ex. B, ¶ 2), Defendants assert that the Winters' Board of Directors only meet at the Winters business address once a month. It is doubtful that service upon a business, only irregularly visited by some or all of the directors, would satisfy the reasonable notice requirements embodied in due process. For example, the Ohio Supreme Court, in construing Ohio Rule 4.1(1), recently held that service upon a business address, only sporadically visited (2 or 3 times a month) by an advisor to that business, was not "reasonably calculated" to reach that individual, and thus was not sufficient to satisfy due process. *Akron-Canton Regional Airport Authority v. Swinehart,* 62 Ohio St.2d 403, 406 N.E.2d 811 (1980). In light of *Swinehart,* it would be anomalous to hold that service of the original complaint in the within matter was sufficient, when Defendants herein visit the Winters business address only once a month, while the individual sought to be served in *Swinehart* visited the business address two or three times a month.

**3.** The affidavit states that Messrs. Martin, Moeller, Oelman and Sharpe are not residents

For similar reasons, service upon the Winters address was inadequate with respect to the directors who were not residents of Ohio. By uncontradicted affidavit (referred to above), Defendants aver that four of the directors were not residents of Ohio.[3] Fed.R.Civ.P. 4(e) permits service upon a non-resident party in the manner prescribed by the relevant state rule. In turn, Ohio R.Civ.P. 4.3(B)(1) permits service of process to be made on an out-of-state defendant by certified mail, to the address set forth in the caption of the complaint as, again, was done herein. But Ohio Rule 4.3(B)(1) must also be applied in light of due process requirements, *see Mitchell v. Mitchell,* 64 Ohio St.2d 49, 413 N.E.2d 1182 (1980) (service upon non-resident's address in divorce action). As argued above, the service of the original complaint was not "reasonably calculated" to reach *any* of the defendant directors, be they residents or non-residents. Moreover, the original complaint alleges no facts which would permit in personam jurisdiction to be asserted over the non-resident director defendants. *See, In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 n.3 (6th Cir.1972) (certified mail pursuant to Ohio Rule 4.3 is only effective upon non-resident defendants "where a valid basis for in personam jurisdiction over the defendants exists.") *See also,* Annot., 100 A.L.R.3d 1108 (1980). Thus, service at the Winters address is not sufficient to satisfy due process requirements with respect to the non-resident defendants.

For these reasons, Defendants' motion to dismiss the original complaint for insufficiency of service of process, pursuant to Federal Rule 12(b)(5), must be, and hereby is, sustained. Defendants' other grounds for dismissal need not be addressed.

### III. DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT IS SUSTAINED IN PART AND OVERRULED IN PART

Defendants move to dismiss the first amended complaint, reiterating the reasons

of the state of Ohio. Doc. # 7, ex. B, ¶ 4.

set forth in support of their motion to dismiss the original complaint and, in addition, set forth two additional grounds: Plaintiffs lack standing to sue under 12 U.S.C. § 73, and the complaint is time-barred by the applicable Ohio statute of limitations. In the alternative, Defendants move to stay the proceedings herein, pending the resolution of an allegedly similar lawsuit in the state courts of Kentucky. The Court will first address the motion to dismiss.

## A. INSUFFICIENCY OF SERVICE OF PROCESS

Once again, insufficiency of service of process bedevils, at least in part, the service of Plaintiff's first amended complaint. Said complaint was properly served upon Winters (as a party defendant), as well as upon seven members of the Board of Directors of Winters (docs. # 11, 14). The record does not reflect any service upon other individual defendants named in the original complaint,[4] although, as previously noted, the first amended complaint purports to reiterate the allegations of, and incorporate by reference, the original complaint. *See* footnote one, *supra*. Thus, to the extent, if at all, the first amended complaint purports to sue Defendants other than those properly served, Defendants' renewed motion to dismiss for insufficiency of service of process, Rule 12(b)(5), is sustained. The motion is overruled with respect to those Defendants properly served, *see* footnote 4, *supra*.

## B. STATUTE OF LIMITATIONS

Both counts of the first amended complaint set forth a number of alleged unlawful acts, which are said to have occurred between 1972 and May 1, 1977. Plaintiffs filed said complaint herein on May 21, 1981, over four years after the final alleged unlawful act. Without conceding that said counts state claims upon which relief can be granted (a defense to be addressed *infra* ), Defendants argue that the complaint is barred by the applicable Ohio statute of limitations. Since Congress provided no statute of limitations for suits brought under 12 U.S.C. § 93, this Court must borrow the "most closely analogous" state statute of limitations, as courts have done with similarly silent federal laws. *See, e.g., Badon v. General Motors Corp.,* 679 F.2d 93 (6th Cir.1982) (29 U.S.C. § 185); *Kilgore v. City of Mansfield,* 679 F.2d 632 (6th Cir. 1982) (per curiam) (42 U.S.C. § 1983); *Herm v. Stafford,* 663 F.2d 669 (6th Cir. 1981) (federal securities laws); *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir. 1975) (42 U.S.C. § 1981). Likewise, the diversity action set forth in Count II of the first amended complaint will be governed by the relevant Ohio statute of limitation. *Underwriters at Lloyd's v. Peerless Storage Co.,* 561 F.2d 20 (6th Cir.1977).

The parties vigorously contest *which* Ohio statute of limitation should be applied to the action herein. Defendants argue that Plaintiff's allegations essentially sound in tort, and that the four-year statute for relief on the ground of fraud should apply. Ohio Rev.Code § 2305.09(C). Plaintiff contends that the allegations in the first amended complaint are grounded on liability created by a statute (not penal in nature), and on breach of an implied contract, and are controlled by a six-year statute of limitation. Ohio Rev.Code § 2305.07.

Plaintiff is clearly correct with respect to Count I. The allegations in Count I. are entirely premised on violations of certain provisions of the National Bank Act, and federal laws are considered "statutes" under Ohio Rev.Code § 2305.07. *See Mason v. Owens-Illinois, Inc., supra.* The statute in question, 12 U.S.C. § 93, provides for relief in the form of damages and cannot be regarded as a penal statute. *Cf. Englander Motors, Inc. v. Ford Motor Co.,* 293 F.2d 802 (6th Cir.1961) (federal antitrust laws providing for compensatory damages are not penal statutes under Ohio Rev.Code § 2305.07).

---

4. Service of the first amended complaint was made upon Winters, as well as Messrs. Kerr, Richards, McSwiney, Price, Meeker, Wozar, and Killen. Docs. # 11, 14. The other ten directors named in the original complaint, *see* footnote 2 *supra*, were not served.

■ Characterizing the cause of action pleaded in Count II is more troublesome. When the nature of a cause of action is disputed, this Court, to determine the same, must examine the cause of action in substance and effect. *Underwriters at Lloyd's v. Peerless Storage Co., supra,* 561 F.2d at 24. Under this standard, characterizing Count II as a breach of contract is not unreasonable, since business agreements are alleged to have existed between Plaintiff and Winters, and the alleged unlawful acts grew out of the alleged breach of the same. The reference in Count II to a breach of an "implied covenant of good faith and for dealing" (¶¶ 11–12) is not unlike terminology used to describe contractual relationships. *Cf.* Ohio Rev.Code § 1301.02(C) [U.C.C. § 1–102(3) ] (parties cannot disclaim obligation of good faith in contracting); 3 Corbin on Contracts, § 570 (1960 & 1982 Supp.) (implied promise to perform contract in good faith). To the extent that Count II sounds in *both* tort and contract, Plaintiff could elect to proceed under the latter. *P.C. & S.L. Ry. Co. v. Hedges,* 41 Ohio St.

233 (1884); 18 O.Jur.3d, *Contracts* § 361 (1980).

Hence, Ohio Rev.Code § 2305.07 provides the appropriate statute of limitation to be applied in this action. To the extent that the first amended complaint seeks to hold the Defendants liable for acts occurring *before* the six-year period ending on the filing of said complaint, Defendants' motion must be, and is, sustained. Plaintiff's complaint is not time-barred in all other respects.

### C. ALLEGED VIOLATIONS OF THE NATIONAL BANK ACT

As noted above, Count I of the first amended complaint rests entirely on alleged violations of the National Bank Act, notably 12 U.S.C. § 73 (requiring bank directors to take an oath that they will honestly administer the affairs of the bank),[5] § 92 (permitting banks to act as insurance agents in cities with a population not exceeding five thousand),[6] and § 93 (directors may be sued for knowing violations of the National Bank Act).[7] Plaintiff essentially

**5.** Section 73 provides, in pertinent part, that: Each director, when appointed or elected, shall take an oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate or willingly permit to be violated any of the provisions of this chapter, and that he is the owner in good faith, and in his own right, of the number of shares of stock required by this chapter, subscribed by him, or standing in his name on the books of the association, and that the same is not hypothecated, or in any way pledged, as security for any loan or debt.

**6.** In addition to the powers now vested by law in national banking associations organized under the laws of the United States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State in which such bank is located to do business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company; and may receive for services so rendered such fees or commissions as may be agreed upon between the said association and the insurance company for which it may act as

agent; and may also act as the broker or agent for others in making or procuring loans on real estate located within one hundred miles of the place in which said bank may be located, receiving for such services a reasonable fee or commission: *Provided, however,* That no such bank shall in any case guarantee either the principal or interest of any such loans or assume or guarantee the payment of any premium on insurance policies issued through its agency by its principal: *And provided further,* That the bank shall not guarantee the truth of any statement made by an assured in filing his application for insurance.

12 U.S.C. § 92.

**7.** If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper district or Territorial court of the United States in a suit brought for that purpose by the Comptroller of the Currency, in his own name, before the association shall be declared dissolved. And in such cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the

argues that Defendants violated both §§ 73 & 92, and that they are liable for such violations in this Court under § 93.

 Defendants vigorously argue that Plaintiff cannot bring suit for any alleged violations of the National Bank Act, since Plaintiff does not fall within the "zone of interests" meant to be protected by the Act. The "zone of interests" test is a prudential limitation applied by courts to determine if plaintiffs have standing in federal court pursuant to Art. III, § 2, of the Constitution. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982); *Gladstone v. Village of Bellwood,* 441 U.S. 91, 100 n. 6, 99 S.Ct. 1601, 1608 n. 6, 60 L.Ed.2d 66 (1979); *Citizens Comm. Against Interstate Route 675 v. Lewis,* 542 F.Supp. 496, 522–23 (S.D.Ohio 1982). Dovetailing with the "zone of interests" test is the fact that § 93 of the Act confers no express right for private litigants to enforce alleged violations of the Act. Courts typically focus on Congressional intent to determine if a federal statute was meant to confer an implied, private right of action. *See, Merrill Lynch, Pierce, Fenner & Smith v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Emmons v. Merrill Lynch, Pierce, Fenner & Smith,* 532 F.Supp. 480 (S.D.Ohio 1982).[8]

Unfortunately, caselaw interpreting lawsuits by private litigants under the Act is both sparse, and for the most part, archaic. One common view, however, links a majority of the older and modern cases: private plaintiffs can only bring suit under § 93 for alleged violations of express and specific duties imposed by the Act. *See Chesbrough v. Woodworth,* 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917) (failure to file report with Comptroller of the Currency, 12 U.S.C. § 161(a)); *B.C. Industries v. First National Bank,* 639 F.2d 828 (1st Cir.1981) (failure to obtain permit from Comptroller, 12 U.S.C. § 92a(a)); *Harmsen v. Smith,* 542 F.2d 496 (9th Cir.1976) (failure to file reports with Comptroller, 12 U.S.C. § 161); *Seiden v. Butcher,* 443 F.Supp. 384 (S.D.N.Y.1978) (filing false quarterly reports, 12 U.S.C. § 161(a)). Other cases, dismissing private actions under § 93, have emphasized that no liability arises from an alleged violation of the "oath" provision relied upon by Plaintiff herein, § 73. *Davis v. McFarland,* 15 F.2d 612, 613 (5th Cir.1926), *cert. denied,* 273 U.S. 754, 47 S.Ct. 457, 71 L.Ed. 875 (1927). *See generally, Golar v. Daniels & Bell, Inc.,* 533 F.Supp. 1021, 1026–27 (S.D.N.Y.1982); *Stein v. Galitz,* 478 F.Supp. 517, 521–22 (N.D.Ill.1978) (both cases outlining, and following, the trend of caselaw interpreting private actions under the Act).[9]

---

association, its shareholders, or any other person, shall have sustained in consequence of such violation.
12 U.S.C. § 93.

**8.** This is not to say that the two inquiries—"zone of interests" and the propriety of implying a private right of action—are identical. The former test concerns the Court's jurisdiction under Art. III, § 2, of the Constitution, and thus a finding adverse to the Plaintiff would seem to render the suit appropriate for dismissal under Rule 12(b)(1), or Rule 12(h)(3). *Park Hills Music Club, Inc. v. Board of Education,* 512 F.Supp. 1040, 1041, 1043–44 n. 2 (S.D.Ohio 1981). On the other hand, an implied right of action can be assumed by a court, *see, e.g., Burks v. Lasker,* 441 U.S. 471, 476 n. 5, 99 S.Ct. 1831, 1836 n. 5, 60 L.Ed.2d 404 (1979), and a finding adverse to the Plaintiff would seem to render the suit appropriate for dismissal under Rule 12(b)(6). *Jackson Transit Authority v. Transit Union Local Division 1285,* —— U.S. ——, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639

(1982). For the purpose of this case, however, the Court deems it appropriate to treat the two inquiries as being essentially the same.

The Court also notes that it is proper to raise *sua sponte* the issue of the lack of a private right of action, even if same has not been raised by the parties, as herein. *Mobil Corp. v. Marathon Oil Co.,* 669 F.2d 366, 370 (6th Cir. 1981), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982); *Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 622 F.2d 216, 230 (6th Cir.1980), *aff'd,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

**9.** Some older cases can be read as adopting Plaintiff's position, that a violation of § 73 can be redressed under a lawsuit predicated on § 93. *See Atherton v. Anderson,* 99 F.2d 883 (6th Cir.1938); *Burckhardt v. Northwestern Nat'l Bank,* 38 F.2d 568, 572 (9th Cir.), *cert. denied,* 281 U.S. 764, 50 S.Ct. 463, 74 L.Ed. 1172 (1930). To the extent that this reading is correct, the Court declines to follow same, giv-

This relatively narrow view of private actions under the Act is supported by two considerations. First, it is very doubtful that *any* private right of action could be implied under the Act, if the leading case of *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–2088, 45 L.Ed.2d 26 (1975) and its progeny were applied. *See B.C. Industries v. First National Bank, supra,* 639 F.2d at 833 n.10; *Golar v. Daniels & Bell, Inc., supra.* Indeed, this rationale could, arguably, support a refusal to imply even the limited private right of action outlined above. *But cf. Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196–97, 96 S.Ct. 1375, 1382–1383, 47 L.Ed.2d 668 (1976); *Curran, supra,* 102 S.Ct. at 1845 n. 88 (lengthy acquiescence by federal courts in recognizing private rights of action considered as factor in implying right of action under *Cort v. Ash*). Second, implying actions under the Act, particularly the "oath" provision, § 73, would have the potential of federalizing "the entire corpus of tort law with respect to bank officers and directors." *Stein v. Galitz, supra,* 478 F.Supp. at 522. This result is to be avoided, *cf. Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (refusing to derive "from congressional civil rights statutes a body of general federal tort law"), particularly where § 73 provides no explicit or implicit guidelines on the scope of a bank director's duties which might arise from the taking of an oath. Such guidelines could, perhaps, be developed as a matter of federal common law, but this result, too, is to be avoided. *Milwaukee v. Illinois,* 451 U.S. 304, 312–13, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981).

Applying these general principles to the case at bar reveals that Plaintiff cannot bring suit under the National Bank Act. Neither § 73 nor § 92 of the Act impose "express and specific duties" upon banks. Section 73 merely mandates that a director take an oath. Section 92 was enacted in 1916 to permit small town banks an additional source of revenue. *Alabama Ass'n of Ins. Agents v. Board of Governors,* 533 F.2d 224, 243 (5th Cir.1976). Plaintiff does not fall within the "zone of interests" to be protected by either provision, and the Court will not imply a cause of action, premised on § 93, to enforce said provisions.[10]

Hence, Count I of the first amended complaint must be, and is, dismissed in its entirety. However, the Court notes that the identical factual allegations set forth in Count II of said complaint would be, and are, cognizable in this Court on the basis of diversity jurisdiction.

For all of the aforesaid reasons, Defendants' motion to dismiss the first amended complaint is sustained in part and overruled in part.

## IV. DEFENDANTS' MOTION TO STAY THE ACTION HEREIN IS OVERRULED

Finally, Defendants move in the alternative, and request, if this Court does not dismiss the action herein, that the action be stayed pending the resolution of a similar lawsuit in the Kentucky state courts.

This Court has the discretionary authority to stay actions pending the outcome of suits in other fora (including state courts), to avoid piecemeal and duplicative litigation. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817–20, 96 S.Ct. 1236, 1246–1247, 47 L.Ed.2d 483 (1976); *Northwood Apartments v. La-Valley,* 649 F.2d 401, 407 (6th Cir.), *vacated and remanded on other grounds,* 454 U.S. 1118, 102 S.Ct. 962, 71 L.Ed.2d 106 (1981); *Hanna v. Toner,* 630 F.2d 442, 445–46 (6th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 346 (1981). And at

---

en the weight and persuasiveness of caselaw to the contrary.

**10.** The Court thus finds it unnecessary to address the other grounds advanced by Defendants in support of their motion to dismiss the allegations under the National Bank Act, to wit: that Plaintiff, in any event, does not fall under the "any other person" language of 12 U.S.C. § 93, listing those individuals for whom directors may be liable for damages, and that Plaintiff does not allege sufficient facts to link the alleged statutory violations with the damages it allegedly suffered.

least one Court has stated that the duplication between the state and federal action must be "substantial," and involve the same parties. *Ystueta v. Parris,* 486 F.Supp. 127, 128 (N.D.Ga.1980). *See also Microsoftware Computer Systems, Inc. v. Ontel Corp.,* 686 F.2d 531 (7th Cir.1982) (stay ordered in federal court in diversity action pending resolution of suit in state court raising identical factual and legal issues).

▇▇▇ However the test is phrased, the Court does not find it appropriate to stay the proceedings herein. The alleged duplicative litigation involves a counterclaim (doc. # 7, ex. A) filed by Plaintiffs herein, in an action in Kentucky state court filed by Winters. The counterclaim, divided into five counts, is factually similar to, but by no means duplicative of, the action herein. Counts I, II, and IV of the counterclaim make a variety of allegations regarding Winters' breach of express warranties on the condition of the 32 mobile homes which Plaintiffs purchased. The fifth Count alleges that Winters misapplied a payment Plaintiffs made on a loan. Finally, the third Count alleges that Winters misapplied monies in the escrow account previously described, and said Count does track, to some extent, the allegations set forth in the first amended complaint herein. However, the individual Defendants herein are not named as Defendants in the counterclaim. Moreover, the record does not indicate if the Kentucky lawsuit is being vigorously pursued by the parties or, indeed, if the lawsuit is still viable at all. Thus, on the basis of the facts before the Court, the Kentucky state lawsuit is simply not so duplicative of the action filed in this Court so as to compel a stay of the proceedings herein. Accordingly, Defendants' motion for a stay is overruled, although the Court does wish to further discuss this matter (see below).

## V. CONCLUSION

The Court's rulings on the pending motions may be summarized as follows:

1) Defendants' motion to dismiss the original complaint is sustained, pursuant to Rule 12(b)(5);

2) Defendants' motion to dismiss the first amended complaint is sustained in part and overruled in part. The motion is sustained

a) to the extent that said complaint purports to sue individual defendants other than those properly served (the defendants properly served are listed in footnote 4, supra);

b) to the extent that said complaint, in reiterating the allegations of the original complaint, purports to hold Defendants liable for acts occurring before the six year period ending February 5, 1981 (the date of the filing of the original, now dismissed, complaint), Fed.R.Civ.P. 15(c); [11]

c) to the extent that said complaint otherwise purports to hold Defendants liable for acts occurring before the six year period ending May 21, 1981 (the date of the filing of the first amended complaint); and

d) with respect to the alleged violations of the National Bank Act in Count I.

The motion to dismiss is overruled in all other respects.

3) Defendants' motion to stay the proceedings herein is overruled.

Counsel listed below should take note that a conference call will be held on Tuesday, November 30, 1982, at 8:20 a.m., to discuss the following matters, as well as any other relevant topics:

1) the state of discovery, when this matter should proceed to trial, the possibility of settlement, etc.;

---

11. As noted above, the first amended complaint added Winters as a defendant. Based on the dictates of Rule 15(c), the reiterated allegations of the original complaint should not apply to Winters. Arguably, the requirement of Rule 15(c)(1) has been met, since Winters undoubtedly had some notice of the institution of this action. However, 15(c)(2) has *not* been met, since the record does not indicate that Winters would have originally been named, "but for a *mistake* concerning the identity of the proper party." (emphasis added). *See* 6 C. Wright & A. Miller, *supra,* § 1498 at 516.

2) whether a trial *by jury* would be appropriate. The original complaint did not demand a jury trial; the first amended complaint did demand a jury trial, but Plaintiff arguably waived that right by not demanding a jury trial in the first instance. However, a jury could be demanded for any new factual issues raised in the first amended complaint. *See, e.g., Walton v. Eaton Corp.,* 563 F.2d 66, 71–72 (3d Cir. 1977) (*en banc*); and

3) the posture of the action in Kentucky state courts. Notwithstanding the Court's denial of the motion to stay herein, if the state proceeding has been resolved, in whole or in part, it may moot this action, in whole or in part, and/or have res judicata or collateral estoppel implications.